IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WAYNE LEE DAWSON, II | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  25-5438 |
| | : | |
| OFFICER REGINALD GRAHAM, | : | |
| OFFICER CARLOS BUITRAGO, | : | |
| CITY OF PHILADELPHIA | : | |

## MEMORANDUM

**MURPHY, J.**                                                                                          **June 3, 2026**

This is a civil rights case involving alleged misconduct by two Philadelphia Police Officers.  According to the complaint, the officers arrested Wayne Lee Dawson, II on drug charges in September 2010.  Mr. Dawson says that the officers — members of the Philadelphia Police Department's Narcotics Field Unit (NFU) — planted drugs on him and fabricated testimony against him.  Such misconduct, Mr. Dawson claims, was rampant throughout the NFU.  Thirteen years later, all charges against Mr. Dawson were *nolle prossed* based upon the misconduct of Officers Graham and Buitrago and overall corruption in the NFU.  Now, Mr. Dawson brings a civil rights action against the officers under 42 U.S.C. § 1983 and related state law for false arrest and malicious prosecution, and *Monell* claims against the City of Philadelphia for its custom of police misconduct within the NFU and its failure to train, supervise, or discipline PPD officers regarding such misconduct.  Officer Buitrago and the City seek to dismiss all claims against them under Rule 12(b)(6).  For the following reasons, we deny defendants' motion.

## I.    FACTUAL BACKGROUND

On September 21, 2025, Mr. Dawson filed a complaint against the City of Philadelphia and Philadelphia Police Officers Graham and Buitrago based on violations of 42 U.S.C. § 1983

and related state torts.  DI 1 at ¶¶ 37-109.  After resolving various service-related issues, Mr. Dawson filed the operative amended complaint.  DI 12.  In it, he alleges that (1) Officers Graham and Buitrago engaged in a civil conspiracy to falsely arrest and maliciously prosecute him in violation of § 1983, and committed the intentional torts of unlawful arrest and malicious prosecution under Pennsylvania law; and (2) the City of Philadelphia, through its final policymakers, (a) failed to properly discipline or sanction its officers despite knowing of such violations by Officers Graham and Buitrago, prevent such misconduct from reoccurring, or properly train and supervise its officers; and (b) tolerated, encouraged, ratified, and was deliberately indifferent toward the patterns, practices, and customs of constitutional violations committed by Philadelphia Police Officers.  *Id.* at ¶¶ 37-109.

Mr. Dawson alleges that Officers Graham and Buitrago were among the officers who unlawfully arrested him on drug charges based upon "false and fabricated statements" that Officers Graham and Buitrago made to secure a search warrant.  *Id.* at ¶¶ 13-15, 18.  He asserts that Officers Graham and Buitrago also helped to falsify testimony and evidence against him.  *Id.* at ¶ 18.  Mr. Dawson alleges that shortly after his trial, Officer Graham was federally investigated for police misconduct and corruption and that, approximately three years later, the Philadelphia Police Department (PPD) charged him with "Conduct Unbecoming" for engaging in criminal activity — resulting in a finding of guilt by the Police Board on Inquiry (PBI).  *Id.* at ¶ 21, 24-25.  And he claims that, between the time of his arrest and the completion of his trial, Officer Buitrago had received numerous serious police misconduct reports and been reported, sued, and investigated at the state and federal levels for police misconduct and abuse, official wrongdoing and corruption, and conducting police work alongside officers who were convicted

for police misconduct. *Id.* at ¶¶ 28-30. He lists various cases in which he alleges that either or both of Officers Graham and Buitrago were involved in police misconduct resulting in the *nolle prosequi*[1] or dismissal of charges against other individuals. *Id.* at ¶¶ 46-60, 68-93. And he asserts that at the time of his trial and the filing of his post-conviction petition, there was information that the DAO did not consider Officer Graham to be credible, noting that he was placed on the DAO's "Do Not Call" list (and intimating that Officer Graham was on this list at the time of his trial). *Id.* at ¶ 115(b)-(e).[2]

In his case, Mr. Dawson asserts that Officers Graham and Buitrago committed police misconduct against him by conspiring to plant one pound of marijuana on him upon his arrest, as part of a continuous and ongoing police misconduct scheme, and that the City knew of the NFU's well-documented misconduct schemes involving planting drugs or fabricating evidence. *Id.* at ¶ 117, 120-122. And he identifies the Police Commissioner "as a final policymaker" for *Monell* liability purposes, naming the various commissioners and their dates in that position.[3] *Id.*

---

[1] "A nolle prosequi is a voluntary withdrawal by the prosecuting attorney of proceedings on a particular bill or information, which can at any[ ]time be retracted to permit a revival of proceedings on the original bill or information." *United States v. Simmons*, 69 F.4th 91, 93 n.1 (3d Cir. 2023) (citing *Commonwealth v. Whiting*, 500 A.2d 806, 807 (Pa. 1985)).

[2] Mr. Dawson asserts that then-Philadelphia District Attorney, Seth Williams, was a final policymaker for *Monell* liability purposes and that he willfully and wantonly failed to disclose the "do not call" list, prejudicing Mr. Dawson. *Id.* at ¶ 149. He claims that DA Williams "maintain[ed], tolerate[d], and/or acquiesce[d] in a pattern, practice, and custom of non-disclosure, evidencing deliberate indifference to [Mr. Dawson]'s constitutional rights and other criminal defendants." *Id.* at ¶ 154. Mr. Dawson further insists that "material and exculpatory law enforcement witness information was withheld from [him]." *Id.* at ¶ 156.

[3] The exhibit notes the following commissioners and dates of service: (1) Charles H. Ramsey, January 7, 2008-January 5, 2016; (2) Richard Ross Jr., January 5, 2016-August 20, 2019; (3) Christine Coulter, late 2019-early 2020; (4) Danielle Outlaw, February 10, 2020-

at ¶¶ 134-36.

The City, Mr. Dawson insists, knew about both officers' corruption and police misconduct and had been sued alongside these officers regarding such misconduct. *Id.* at ¶¶ 26, 29, 31. Mr. Dawson maintains that "the constitutional harms and torts committed by Defendants Reginald Graham and Carlos Buitrago were the direct and proximate result of the improper and unlawful policies, practices, and customs of the [PPD], which includes all of its Narcotics Units, and the District Attorney's Office." *Id.* at ¶ 33. He asserts that the City adopted, with deliberate indifference, a policy, custom, and practice of failing "to supervise, monitor, and properly correct discipline, and/or train police officers, particularly those in the NFU" regarding various examples of misconduct. *Id.* at ¶ 36.[4] At the time of his arrest, prosecution, sentencing, and incarceration, Mr. Dawson asserts that the City "had in force and effect policies, practices, and customs of unconstitutional police misconduct which plagued and festered in the [NFU] of the [PPD], including fabricating inculpatory evidence, withholding exculpatory evidence, fabricating

_____

September 22, 2023. *Id.* at ¶ 138.

[4] These include: "(1) failing in their official duties to provide only truthful and verifiable information in securing search and arrest warrants, 2) failing to disclose exculpatory evidence in criminal cases, 3) failure to ensure relationships and dealings with confidential informants were legal and in accord with Police Department policies and within constitutional bounds, 4) failure in official duty to provide accurate and truthful information to the prosecutor's office, 5) failing in obligation to effectuate only lawful arrests on adequate legal grounds, 6) failing in duty to report and disclose police misconduct, illegal actions, and criminal conduct of fellow police officers to internal affairs, 7) failure to properly and legally execute search warrants, including reporting of thefts of contraband and monies seized from illegal activities, and 8) failing to only initiate criminal charges and pursue prosecution when based strictly in verifiable and credible evidence and information obtained solely through lawful means, and not fabricating evidence or falsifying testimony to manipulate and effectuate nefarious law enforcement objectives." *Id.* at ¶ 36.

testimony and crimes of perjury and official corruption." *Id.* at ¶ 100.  On September 22, 2023,

Mr. Dawson states that all charges against him were *nolle prossed* upon a motion of the

Philadelphia District Attorney's Office (DAO) based upon (1) admissions of police misconduct

pertaining to the defendants; and (2) the totality of the circumstances surrounding Mr. Dawson's

arrest and prosecution, which demonstrated the City's knowledge that his case was tainted by

"proven police [mis]conduct, constitutional violations, and rampant official corruption in the

NFU." *Id.* at ¶ 27.

## II.    MOTION AT ISSUE

The City and Officer Buitrago seek dismissal of Mr. Dawson's claims against them.[5]  DI

20.  They argue that Mr. Dawson has failed to plead a *Monell* claim against the City because he

has not adequately pled (1) the existence of a municipal decisionmaker;[6] nor (2) facts to establish

a policy or custom regarding the failure to discipline, supervise, or train subordinates.  *Id.* at 5-

15.  Nor, they contend, should we permit discovery into Mr. Dawson's policy, practice, or

custom theory simply so that he may cure his pleading deficiencies.  DI 23 at 1.  Defendants

further assert that Mr. Dawson has not alleged sufficient facts to support any theory of municipal

liability, such that it was not on notice of his theory of liability.  DI 20 at 8.  And they emphasize

the lack of causal connections between the City's alleged wrongdoing and the violations which

---

[5] Officer Graham does not join defendants' motion to dismiss and has instead filed an answer to Mr. Dawson's operative amended complaint.  DI 19.

[6] Defendants insist that Mr. Dawson must identify a policymaker, not simply list the "Police Commissioner" without naming who that person is.  DI 23 at 2.  And they urge that the District Attorney cannot be named a policymaker because (1) the District Attorney does not create or implement the policies or decisions for PDP officers; and (2) Mr. Dawson does not name any DAO employees in his complaint.  *Id.*

allegedly occurred respecting Mr. Dawson. *Id.* at 10-11. As for Officer Buitrago, defendants insist that Mr. Dawson's claims amount to nothing more than bald and conclusory statements and a "guilty by association" theory. *Id.* at 15-17. They further argue that Officer Buitrago is entitled to qualified immunity for any Fourteenth Amendment claims against him. *Id.* at 17.

Mr. Dawson opposes defendants' motion to dismiss. DI 22. He argues that his *Monell* claims must survive dismissal because he (1) clearly identified municipal policymakers, the District Attorney and Police Commissioner, and that such individuals need not be named as parties to be sufficiently identified; and (2) alleged sufficient facts to plead a theory of municipal liability based on the City's failure to train and/or supervise, noting his examples of a pattern of misconduct by NFU officers and the defendant officers. *Id.* at 2-5. And Mr. Dawson insists that his claims against Officer Buitrago should survive dismissal because he alleged numerous examples of Officer Buitrago's police misconduct, which have led to multiple federal lawsuits against him. *Id.* at 5-9.

## III.    LEGAL STANDARDS

### A.    Rule 12(b)(6) challenges

A party may seek to dismiss an action against it by asserting that the complaint failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In evaluating a Rule 12(b)(6) motion, we must only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (citation omitted). We also shall "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most

favorable to the nonmovant." *Id.* (citation omitted).  To survive dismissal, a plaintiff's complaint must state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Whether the complaint meets this plausibility standard is a context-specific inquiry which requires us to use our common sense and judicial experience.  *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not show[n] — that the pleader is entitled to relief."  *Id*. (citation modified) (citation omitted).

## B.      Section 1983 claims

Section 1983 permits an individual to bring civil lawsuits based upon deprivations of his federal constitutional rights by persons acting under color of state law.  42 U.S.C. § 1983.  This provision does not provide standalone substantive rights, but instead acts as a means for remedying violations of federal law committed by those acting under state authority.  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (citations omitted).

False arrest and malicious prosecution are species of § 1983 claims.  To establish a false arrest claim, the plaintiff must demonstrate that he was arrested and that the arresting officers lacked probable cause to believe that he committed the offense for which he was arrested. *Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) (citation omitted). "Probable cause is proof of facts and circumstances that would convince a reasonable, honest individual that the suspected person is guilty of a criminal offense." *Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir. 1993) (citations omitted).  Whether probable cause existed is generally a

question of fact. *Groman*, 47 F.3d at 635 (citation omitted).[7] To state a *prima facie* malicious

prosecution case under § 1983, the plaintiff must establish that (1) the defendant initiated a

criminal proceeding without probable cause; (2) the proceeding ended in the plaintiff's favor;[8]

(3) the defendant acted with malice or for a purpose other than to bring the plaintiff to justice;

and (4) the plaintiff has alleged sufficient facts to demonstrate he suffered "a plausible

deprivation of liberty consistent with the concept of seizure." *Hartpence v. Madison Twp.*, 617

Fed. Appx. 158, 161 (3d Cir. 2015) (citation modified) (citing *Lippay*, 996 F.2d at 1502; *Rose v.

Bartle*, 871 F.2d 331, 349 (3d Cir. 1989); *Donahue v. Gavin*, 280 F.3d 371, 380 (3d Cir. 2002)).[9]

Section 1983 malicious prosecution claims may include law enforcement conduct that violates

the Fourth Amendment or the procedural due process clause of the Fourteenth Amendment.

*Torres v. McLaughlin*, 163 F.3d 169, 173 (3d Cir. 1998), *called into doubt on other grounds as

recognized by Schneyder v. Smith*, 653 F.3d 313, 321 (3d Cir. 2011).

　　　The qualified immunity doctrine shields government officials from civil damages liability

provided that their actions did not "violate clearly established statutory or constitutional rights of

---

[7] False arrest under Pennsylvania law is essentially synonymous with false arrest under § 1983, as it requires the plaintiff to establish that he was arrested without probable cause. *Alleyne v. Pirrone*, 180 A.3d 524, 543 (Pa. Cmwlth. Ct. 2018) (citations omitted); *see also Patzig v. O'Neil*, 577 F.2d 841, 849 n.9 (3d Cir. 1978) (stating that "arguably the same pleading and proof rules apply to constitutional false arrest claims as common law false arrest claims") (citation omitted).

[8] A grant of *nolle prosequi* is sufficient to satisfy the requirement of favorable termination only if the "final disposition is such as to indicate the innocence of the accused[.]" *Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002) (citation omitted).

[9] The first three elements of malicious prosecution track the elements required to prove malicious prosecution under Pennsylvania law. *Hartpence*, 617 Fed. Appx. at 161 (citing *Lippay*, 996 F.2d at 1502).

which a reasonable person would have known." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  We assess whether (1) the plaintiff's allegations demonstrate a violation of a constitutional or statutory right; and (2) the law was clearly established when that violation occurred.  *Id.* (citation omitted); *Harlow*, 457 U.S. at 818.  "Qualified immunity protects official action if the officer's behavior was objectively reasonable in light of the constitutional rights affected." *Carter v. City of Philadelphia*, 181 F.3d 339, 356 (3d Cir. 1999) (citation modified) (citation omitted).

## C.    Monell liability

A municipality may be held liable under 42 U.S.C. § 1983 pursuant to *Monell* liability when the municipality's official policy or custom, or its failure or inadequacy (along with deliberate indifference) caused a constitutional violation.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Forrest v. Parry*, 930 F.3d 93, 105-06 (3d Cir. 2019).  Plaintiffs may bring "claims sounding in both" policy or custom and in a failure to train, supervise, or discipline subordinates.  *Forrest*, 930 F.3d at 106.

To establish a *Monell* claim based on a policy or custom, a plaintiff must show that (1) the municipality had (a) a policy (*i.e.*, something that "is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issue[d] an official proclamation, policy, or edict" or (b) a custom (*i.e.*, "a given course of conduct" that, though not specifically authorized by law or endorsed, "[wa]s so well-settled and permanent as virtually to constitute law"); that (2) proximately caused the plaintiff's injuries. *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citations omitted).  Causation requires "an affirmative link between the policy or custom and the particular constitutional violation" alleged,

9

which may be established by demonstrating that (1) the municipality was aware of prior similar unlawful conduct and failed to take measures to prevent future similar misconduct; and (2) the municipality's failure at least partly caused plaintiff's injury. *Id.* (citation modified) (citation omitted). The plaintiff need not prove that the municipality formally approved the custom. *Id.* at 798 (citation omitted). Whether the municipality's custom proximately caused plaintiff's constitutional injury is generally a question for the jury, "[a]s long as the causal link is not too tenuous." *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990).

For *Monell* claims based on a municipality's failure to train, supervise, or discipline subordinates, plaintiffs must demonstrate that (1) the municipality failed or was inadequate regarding its training, supervision, or discipline of subordinates; (2) in a manner that (a) reflected the municipality's deliberate indifference, and (b) caused the plaintiff's injuries. *Forrest*, 930 F.3d at 105. "A plaintiff sufficiently pleads deliberate indifference by showing that (1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Roman*, 914 F.3d at 798 (citation modified) (citation omitted). Plaintiffs need not allege an unconstitutional municipal policy or custom if alleging a *Monell* claim under this theory. *Forrest*, 930 F.3d at 105-06 (citation omitted).

## IV.    DISCUSSION

### A.    Mr. Dawson's claims against Officer Buitrago survive dismissal because he has alleged sufficient facts to establish false arrest and malicious prosecutions claims under § 1983 and Pennsylvania law which are not shielded by qualified immunity

We deny defendants' motion to dismiss Mr. Dawson's claims against Officer Buitrago

10

because Mr. Dawson has pled sufficient facts to state a claim for relief for constitutional and state law-based false arrest and malicious prosecution.  Mr. Dawson alleges that Officers Buitrago and Graham arrested Mr. Dawson and, in the course of arresting him and searching his vehicle, planted one pound of marijuana.  *Id.* at ¶ 121.  Construing Mr. Dawson's allegations as true and in the light most favorable to him, this is sufficient to establish that Officer Buitrago arrested Mr. Dawson without probable cause to believe that he committed the drug offense for which he was arrested.  *See Groman*, 47 F.3d at 634.  Mr. Dawson thus survives dismissal of both his § 1983 and state law-based false arrest claims because they share the same essential pleading requirements.  *See Alleyne*, 180 A.3d at 543; *Patzig*, 577 F.2d at 849 n.9.

These allegations, in combination with his allegations that Officers Buitrago and Graham made "false and fabricated statements to other police personnel, and to tribunals and courts in Philadelphia County, in order to secure search warrants and to falsify testimony and evidence to be used against [Mr. Dawson]" and that all charges against him were *nolle prossed* "based on admissions of police misconduct involving Defendants[,]" are also sufficient to state a claim for relief based on malicious prosecution.  DI 12 at ¶¶ 18, 27, 121.  Such allegations establish that (1) Officer Buitrago participated in initiating a criminal proceeding by fabricating evidence and testimony, where that proceeding was initiated without probable cause; (2) that proceeding ended in Mr. Dawson's favor after it was *nolle prossed* due to police misconduct (under circumstances that suggest Mr. Dawson's innocence of the crime charged); and (3) Officer Buitrago acted maliciously or for a purpose other than bringing Mr. Dawson to justice.  *See Hartpence*, 617 Fed. Appx. at 161.  Mr. Dawson's § 1983 and state law-based malicious prosecution claims survive dismissal, as the elements of his state claim are subsumed within those of his federal claim.  *Id.*

(citations omitted).

Nor is dismissal warranted on qualified immunity grounds. The allegations in the amended complaint regard actions by Officer Buitrago that clearly violated Mr. Dawson's constitutional rights: fabricating evidence and testimony. "[T]he constitutional rule that framing criminal defendants through use of fabricated evidence, including false or perjured testimony, violates their constitutional rights applies with such obvious clarity that it is unreasonable for us to conclude anything other than that the [officers] were on sufficient notice that their fabrication of evidence violated clearly established law." *Dennis v. City of Phila.*, 19 F.4th 279, 290 (3d Cir. 2021). Qualified immunity does not shield Officer Buitrago from liability for his conduct, as it is not objectively reasonable to fabricate evidence and testimony against a defendant to arrest him and pursue his prosecution. *See Kelly*, 622 F.3d at 253; *Carter*, 181 F.3d at 356.

**B.    Mr. Dawson has alleged sufficient facts to establish *Monell* claims against the City based on a custom regarding NFU misconduct and its failure to train, supervise, and discipline subordinates for such misconduct**

We also deny defendants' motion to dismiss Mr. Dawson's claims against the City because Mr. Dawson has pled sufficient facts for his *Monell* liability theories. Mr. Dawson has presented sufficient allegations to state a claim that the City, through the PDP, had a well-settled and permanent custom of police misconduct within the NFU — specifically, of fabricating evidence and testimony and withholding exculpatory evidence. DI 12 at ¶ 100. Mr. Dawson alleges that Officers Buitrago and Graham engaged in this very behavior in his case. *Id.* at ¶¶ 18, 121. He asserts: (1) from the date of his arrest through the date of his trial, both officers had already (a) "been reported for, sued, and placed under state and federal investigation [for] suspected [ ] police abuse and misconduct, official wrongdoing and corruption[,]" and (b)

12

"work[ed] alongside other Philadelphia Police Officers in the NFU who were ultimately successfully prosecuted and criminally convicted for police misconduct"; and (2) prior to his arrest, both officers had been the subject of "a large number of serious police misconduct complaints . . . involving serious abuse of police authority." *Id.* at ¶¶ 28, 30. Mr. Dawson identifies the PPD Police Commissioner as the policymaker responsible for sanctioning this custom, and he names the four commissioners in that position during the relevant time period. *Id.* at ¶¶ 134-36; *see Keenan v. City of Phila.*, 983 F.2d 459, 468 (3d Cir. 1992) (explaining that the PPD Police Commissioner qualifies as an official policymaker for *Monell* purposes). This is sufficiently specific for identification purposes at the pleadings stage. And Mr. Dawson has alleged a sufficient causal connection between this custom of misconduct within the NFU and the misconduct that he claims occurred in his case: his facts demonstrate that the City was aware of this fabrication-related misconduct and failed to take measures to prevent it from recurring, and that this failure at least partially resulted in his wrongful arrest and prosecution. *See Roman*, 914 F.3d at 798.

Mr. Dawson also has alleged sufficient facts at this stage to establish a *Monell* claim based on the City's failure to train, supervise, or discipline PDP officers within the NFU. The facts above indicate that there was a longstanding pattern of police misconduct, specifically within the NFU, and that before Mr. Dawson's arrest both Officers Buitrago and Graham had received "a large number of serious police misconduct complaints" against them for which they were not meaningfully disciplined. DI 12 at ¶ 30. The allegations are specific to the City's failure to supervise, monitor, train, and discipline officers with respect to providing truthful information in securing and executing arrest and search warrants, truthfully communicating with

13

the prosecutor's office, ensuring the veracity of evidence and testimony, disclosing exculpatory evidence, maintaining legal relationships with confidential informants, and reporting and disclosing police misconduct. *Id.* at ¶ 36. Thus, the amended complaint fairly alleges the City's deliberate indifference regarding such alleged misconduct, because the City allegedly knew that (1) such misconduct was occurring; (2) there would be future opportunities for such misconduct to reoccur; and (3) such misconduct would frequently result in accused persons suffering deprivations of their constitutional rights. *See Roman*, 914 F.3d at 798. Accordingly, we deny defendants' motion to dismiss the claims against the City.

## V.    CONCLUSION

Defendants are not entitled to dismissal under Rule 12(b)(6). Mr. Dawson has adequately pled constitutional and state-based false arrest and malicious prosecution claims against Officer Buitrago. He also has adequately alleged *Monell* claims against the City based on its custom of police misconduct within the NFU and its failure to train, supervise, or discipline its officers regarding such misconduct. Accordingly, we deny defendants' motion to dismiss in full.